IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY BARRETT** | : | CIVIL ACTION |
| *ON BEHALF OF HIMSELF AND* | : | |
| *OTHERS SIMILARLY SITUATED* | : | |
| | : | |
| v. | : | |
| | : | No. 22-4708 |
| | : | |
| | : | |
| **THE TJX COMPANIES, INC.** | : | |

**Perez, J.**                                                                                                    **March, 26, 2024**

I.   **BACKGROUND**

Plaintiff Troy Barrett ("Plaintiff") initiated this putative class action lawsuit against Defendant The TJX Companies, Inc. ("Defendant" or "TJX") in the Court of Common Pleas of Philadelphia, County. Plaintiff, an hourly wage employee of TJX, brought the action against Defendant for alleged violations of the Pennsylvania Minimum Wage Act ("PMWA"). Plaintiff argues Defendant has failed to pay Plaintiff and other class members overtime premium compensation for time spent: "(i) walking within the distribution center to time clocks at the beginning of the workday; (ii) waiting at time clocks at the beginning of the workday; and (iii) walking within the distribution center from time clocks at the end of the workday" (Compl. ¶ 30, Doc No. 1-3).

The Parties do not dispute that Plaintiff is a member of a collective bargaining unit and members are subject to two separate collective bargaining agreements ("CBAs") with the entities operating TJX distribution centers in Philadelphia and Pittston, PA.  The CBAs contain provisions addressing calculation of wages, incentive pay rates, overtime computation, holidays, and clocking requirements (*See* Notice of Removal at ECF No 1, Exh. B).

On November 23, 2022, Defendant removed this action to federal court based on 28 U.S.C. §§ 1441, 1446 and 1331. Defendant argues that Plaintiff's state law claim is preempted by § 301 of the Labor Management Relations Act ("LMRA") and that this Court has original jurisdiction. The matter is now before the Court on Plaintiff's motion to remand this case back to the Court of Common Pleas of Philadelphia County. For the reasons that follow, Plaintiff's motion will be granted.

## II.   STANDARD OF REVIEW

The United States District Courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). This Court can assert original jurisdiction over cases based either on diversity of citizenship, 28 U.S.C. § 1332(a), or federal question jurisdiction, 28 U.S.C. § 1331. Section 1441(a) of Title 28 provides that civil actions filed in a state court in which a federal district court would have original jurisdiction are removable by the defendant. *See* 28 U.S.C. § 1441(a). Accordingly, "[t]he propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).

The procedure after removal of a state court action to federal court is governed by 28 U.S.C. § 1447. When assessing a plaintiff's motion to remand, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). It is settled law in the Third Circuit that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)); *see also McCann v. George W. Newman Irrevoc. Trust*, 458 F.3d 281, 286

(3d Cir. 2006) (reiterating that "[t]he party asserting diversity jurisdiction bears the burden of proof."). Where subject-matter jurisdiction is lacking, a district court must remand the case to state court. 28 U.S.C. § 1447(c).

### III. LEGAL ANALYSIS

#### A. *Federal Preemption under the LMRA*

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

parties." 29 U.S.C. §185(a). Section 301 been construed by the United States Supreme Court "to authorize the federal courts to fashion a body of common law for the enforcement of collective bargaining agreements." *Larue v. Great Arrow Builders LLC*, 2020 WL 5747818, at *3 (W.D. Pa. Sept. 25, 2020) (citing *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957)). Section 301 serves to completely preempt state law claims in certain instances. *See Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 23 (1983) (noting that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301") (internal quotation omitted).

The Supreme Court has described the limitations of preemption pursuant to Section 301 as follows:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private

parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211-12 (1985). Where contract interpretation is not the basis of a lawsuit, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Rather, "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 **only if** such application requires the interpretation of a collective bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413 (1988) (emphasis added); *Lueck,* 471 U.S. at 220 (finding that where a state claim "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" it will be preempted by § 301); *Kline v. Security Guards Inc.,* 386 F.3d 246, 256 (3d Cir.2004) ("[T]he dispositive question here is whether ... [the] state claims require any *interpretation* of a provision of the CBA."); *see also Antol v. Esposto,* 100 F.3d 1111, 1117 (3d Cir.1997) ("[T]he 'well-pleaded complaint' rule prevents removal to federal court if a plaintiff chooses to present only a state law claim and preemption is raised solely as a defense.... Although preemption may be a valid defense, jurisdiction remains with the state court.") (internal citation omitted).

While LMRA preemption serves to protect the federal interests and policies underlying the doctrine, it cannot be used "to pre-empt nonnegotiable rights conferred on individual employees

as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). In considering whether LMRA preemption applies, courts must look to "the legal character of a claim" that determines "whether a state cause of action may go forward." *Id*. at 123-24. To survive a preemption defense, a plaintiff's claim must be one that truly is "independent" of rights created through the collective bargaining agreement. *Id.* Where an employer's "liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Id.* at 125.

B.  *Relevant state law*

While the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201 *et seq.*, establishes "a national floor under which wage protections cannot drop," it does not preclude states from enacting more beneficial wage and hour laws. *Chevalier v. Gen'l Nutrition Ctrs., Inc.*, 220 A.3d 1038, 1055 (Pa. 2019). Thus, the Pennsylvania Minimum Wage Act provides more generous protections to employees in the state. *See id.* Among the PMWA's protections are requirements that "[e]very employer shall pay to each of his or her employees wages for all hours worked," and employees "shall be paid for overtime not less than one and one-half times the employee's regular rate.... for hours in excess of forty hours in a workweek." 43 P.S. § 333.104(a), (c). Furthermore, "hours worked" has been defined in Pennsylvania by regulation as:

> ... time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1(b).

To state a plausible claim under the PMWA for unpaid wages, a plaintiff must sufficiently allege that (1) plaintiff was an employee, (2) defendant was the employee's employer, and (3) the defendant failed to pay the plaintiff wages as required by the PMWA. *See* 43 P.S. § 333.104; *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069, 2021 WL 5370047 (W.D. Pa. Nov. 18, 2021). To allege a claim based on unpaid overtime wages, a plaintiff may allege that they "typically" worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks.'" *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258-59 (E.D. Pa. 2020) (quoting *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014)).

### IV.    DISCUSSION

The central issue of dispute in Plaintiff's Complaint is whether wage employee's time spent waiting and walking between their workplace destinations before the scheduled start time and after the scheduled end time of each workday, is compensable under the PMWA. Plaintiff argues that the claim for overtime wages will be decided by applying the facts to PMWA's statutory and regulatory language regarding what constitutes "hours worked", rather than an interpretation of the CBAs. Plaintiff points the Court to *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191 (Pa. 2021), wherein the Pennsylvania Supreme Court interpreted "hours worked" under the PMWA, finding that "[s]uch compensable time includes, inter alia, all 'time during which an employee is required by the employer to be on the premises of the employer,' id., and must be paid 'regardless of whether the employee is actually performing job-related duties while on the premises." *Id.* at 204.

Defendant urges that, to resolve this matter, a court will need to interpret the CBAs in the following ways: "(1) to determine whether it meets the criteria under Pennsylvania Minimum Wage Act ("PMWA") regulations to qualify as an agreement to pay overtime that is deemed to

satisfy PMWA requirements; (2) to determine the impact of complex incentive and premium pay provisions that may count as credits toward, or completely satisfy, alleged overtime obligations; and (3) to interpret differences in provisions between the CBAs (and will have to do so over time with respect to factors (1) and (2) to determine the ability of Plaintiff to certify his pled class)." (ECF No. 14 at 6). Defendant identifies several provisions dealing with pay rates and overtime calculations, but fails to suggest any specific language contained in the CBA provisions that require *interpretation* by a court.

This Court concludes that the sole issue of dispute presented by Plaintiff's suit is whether the contested work-related activities surrounding clocking in and out are compensable as 'hours worked' under Pennsylvania law. The determination of whether these requisite pre- and post-work activities are compensable is a matter of state law interpretation, not interpretation of the CBAs. While it may be true that a court will need to reference the CBAs if Plaintiff is successful on the merits, reference to the CBA for purposes of damages calculation is not sufficient for federal preemption under the LMRA. The provisions of the CBA relevant to resolution of Plaintiff's claim will demand *arithmetic* not interpretation.

## V.  CONCLUSION

For the reasons contained herein, this Court with grant Plaintiff's motion to remand this case to state court. An appropriate order to follow.